[No. 59633-6. En Banc. October 7, 1993.]

WASHINGTON INSURANCE GUARANTY ASSOCIATION, *on the Relation of Lila G. Bloch, Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*

*Christine O. Gregoire, Attorney General,* and *Jeffrey P. Bean, Assistant,* for appellant.

*Arnold J. Barer* and *Daniel Gordy,* for respondent.

DURHAM, J. — The Department of Labor and Industries (Department) seeks to enforce its lien against proceeds received by respondent Lila Bloch from the Washington Insurance Guaranty Association (WIGA). WIGA's enabling statute forbids WIGA funds from being recovered by "any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise". RCW 48.32.030(4). The resolution of this case turns on whether the Department acts as an "insurer" by administering our workers' compensation laws. We hold that the Department does not function as an insurer for purposes of RCW 48.32.030(4) and, therefore, may enforce its lien against Bloch's recovery.

On April 19, 1985, Bloch was injured while working for the Family Daycare Association of King County. Bloch filed a workers' compensation claim pursuant to RCW Title 51. The Department paid $10,752.01 on her claim.

Bloch's injury occurred while she was inspecting a daycare facility operated by Deborah Hiller and her husband. Bloch elected to sue the Hillers for negligence. The Hillers were insured by Mission Insurance Company (Mission), who retained defense lawyers to defend its insured. In December 1986, Bloch's claims against the Hillers were settled for $48,000.

Before Bloch's settlement agreement could be implemented, Mission became insolvent. Hence, Bloch filed a claim for reimbursement with WIGA, which "stands in the shoes" of the insolvent insurer, and will provide the insured with coverage up to a certain amount.[1] RCW 48.32. Bloch

---

[1] WIGA was created in order to "provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers". RCW 48.32.010.

eventually accepted $30,000 as full compensation upon her covered claim. Pursuant to RCW 48.32.100(1), WIGA had reduced any amount otherwise payable to Bloch by any amounts she had received from the Department. WIGA also agreed to hold Bloch harmless from any claim of the Department.

On January 6, 1989, the Department notified Bloch that it would make no future payment on her claim because of her receipt of proceeds from her third party recovery. The Department also entered an order declaring its lien and demanding reimbursement in the amount of $10,241.17. WIGA appealed the order, and the Board of Industrial Insurance Appeals affirmed the order. The Superior Court granted WIGA's summary judgment motion, reversing the Board, and denying the Department "a right of subrogation against or a lien upon" Bloch's recovery. Clerk's Papers, at 71. The Department appealed this decision to the Court of Appeals and we granted the Department's motion to transfer the case to this court.

■ The determinative issue in this case is whether the Department, in administering our state's workers' compensation fund (state fund), is an insurer for purposes of RCW 48.32.030(4). A brief explanation of the two competing statutory schemes involved will be helpful. On one hand, we have our workers' compensation act, which applies to almost all workers and employers in this state. RCW 51.04. The workers' compensation act provides the exclusive remedy for workers injured during the course of their employment; all remedies outside of the act were abolished except as provided for in RCW Title 51. RCW 51.04.010. There are only two methods for providing such compensation: participation in the state fund or qualifying as a self-insurer. RCW 51.14.010. Under this statute, a worker who has received compensation may elect to sue any liable third party, or the worker may assign his or her cause of action to the Department. RCW 51.24.030-.050. If the worker elects to sue, the Department is entitled to a lien against such proceeds as may eventually be recovered. RCW 51.24.060. The purpose of the lien is to protect the state

fund by providing for reimbursement. *Clark v. Pacificorp*, 118 Wn.2d 167, 184, 822 P.2d 162 (1991). Such reimbursement is mandated so that "(1) the accident and medical funds are not charged for damages caused by a third party and (2) the worker does not make a double recovery". *Maxey v. Department of Labor & Indus.*, 114 Wn.2d 542, 549, 789 P.2d 75 (1990).

On the other hand, we have the Washington Insurance Guaranty Association Act, RCW 48.32 (hereinafter the Guaranty Act). The Guaranty Act creates a nonprofit unincorporated entity known as the WIGA to which every insurer in the state, with certain exceptions, must belong. RCW 48.32-.040. Providers of workers' compensation are excepted from membership.[2] RCW 48.32.020. WIGA assumes the responsibilities of insolvent insurers, and provides coverage to the insured for the lesser of the policy amount or $300,000. RCW 48.32.060. The Guaranty Act itself is patterned after a model act written by the National Association of Insurance Commissioners (NAIC). *See* NAIC State Post-Assessment Insurance Guaranty Association Model Bill *in 1970 Proceedings of the National Association of Insurance Commissioners* 253 (Model Bill). Versions of this model act have been adopted in almost every state. Paul G. Roberts, Note, *Insurance Company Insolvencies and Insurance Guaranty Funds: A Look at the Nonduplication of Recovery Clause*, 74 Iowa L. Rev. 927, 934 (1989).

The crux of this dispute involves a decision as to what is a "covered claim" under the Guaranty Act. The Guaranty Act defines "covered claim" as:

> "Covered claim" means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies . . .. *"Covered claim" shall not include any amount due any reinsurer,*

---

[2]The Department argues that this section also exempts application of the Guaranty Act to workers' compensation liens. While this section does exempt workers' compensation providers from membership in the association, it is not dispositive as to the interpretation of the provisions of the Guaranty Act denying recovery to insurers. Insurers who are not members of WIGA (*e.g.*, out-of-state insurers) could still be barred from recovery by RCW 48.32.030(4).

*insurer, insurance pool, or underwriting association, as subroga-*
*tion recoveries or otherwise[.]*

(Italics ours.) RCW 48.32.030(4). The definition goes on to state that any claim which would be a "covered claim" but for the fact that it is for the benefit of a reinsurer, insurer, insurance pool or underwriting association, may be filed directly with the insolvent insurer's receiver, "but in no event may any such claim be asserted in *any legal action* against the insured of such insolvent insurer". (Italics ours.) RCW 48.32.030(4). This clause re-emphasizes the breadth of the "subrogation recoveries or otherwise" language.[3] Hence, if the Department is defined as a "reinsurer, insurer, insurance pool or underwriting association", its lien will not be a covered claim, and it will be prohibited from any attempt to recover from Bloch. However, if the Department is not found to be an insurer, it will be able to enforce its lien.

▮ The Guaranty Act itself does not define "reinsurer, insurer, insurance pool or underwriting association", although earlier in RCW Title 48, both "insurance" and "insurer" are defined. "Insurance" is defined as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies". RCW 48.01.040. "Insurer" is defined as including "every person engaged in the business of making contracts of insurance, other than a fraternal benefit society". RCW 48.01.050. It is the contractual nature of the undertaking that determines the insurer status. *Cf. Kyrkos v. State Farm Mut. Auto. Ins. Co.*, 121 Wn.2d 669, 674-75, 852 P.2d 1078 (1993) (self-insurance not insurance for purposes of underinsured motorist statute).

---

[3]The Guaranty Act also forbids duplication of recovery by an insured:

   Any person having a claim against his insurer under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy.

RCW 48.32.100. Hence, regardless of whether the Department is held to be an insurer, the injured worker will have no right to double recovery. *Compare* RCW 48.32.100 *with* RCW 51.24.060.

It is undisputed that the Department is not engaged in making such contracts. Rather, participation in the fund is mandatory, unless an employer qualifies as a self-insurer. "RCW Title 51 is an exercise of the police power that uses public funds and administers governmental functions under a statute whose terms and requirements are nonnegotiable." *Shum v. Department of Labor & Indus.*, 63 Wn. App. 405, 411, 819 P.2d 399 (1991). Workers' compensation benefits are paid under state law, not under an insurance policy. The workers' compensation act is not the equivalent of a contract. *Crown Zellerbach Corp. v. Department of Labor & Indus.*, 98 Wn.2d 102, 108-09, 653 P.2d 626 (1982). By the clear terms of the definitions provided by the Legislature, the Department is not an insurer.

Our previous decisions have also recognized that the workers' compensation fund is not considered the equivalent of insurance. *See Stertz v. Industrial Ins. Comm'n*, 91 Wash. 588, 158 P. 256 (1916); *Favor v. Department of Labor & Indus.*, 53 Wn.2d 698, 703, 336 P.2d 382 (1959). Although some cases have described Washington's workers' compensation statute as an "industrial insurance act", their language did not show an intent to treat such compensation as "insurance". *See Stertz*, at 594; *Greenleaf v. Puget Sound Bridge & Dredging Co.*, 58 Wn.2d 647, 658, 364 P.2d 796 (1961). One seminal case explained the workers' compensation act this way:

> Our workers' compensation system is in fact an industrial insurance act. . . .
> . . . It is not the equivalent of an insurance contract. The Legislature may alter the employers' responsibilities. In the past, the Legislature has directed the Department to collect sums which under general insurance principles would not be collectible. . . . Further, although employer payments to the State fund are often referred to as premiums, RCW 51.08.015 provides that the term "premium" should be construed to mean taxes.

*Crown Zellerbach*, at 108-09. *Accord Shum*, at 411 (noting that the Department does not act as a private insurer in administering RCW Title 51); *Washington Ins. Guar. Ass'n v.*

*Mullins*, 62 Wn. App. 878, 885, 816 P.2d 61 (1991) (agreeing that workers' compensation benefits are not insurance benefits). Similarly, we have held that disability benefits paid under the analogous Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF), RCW 41.26, do not qualify as insurance benefits. *Britton v. Safeco Ins. Co.*, 104 Wn.2d 518, 532, 707 P.2d 125 (1985). *See. also Washington Ins. Guar. Ass'n v. Mullins*, 62 Wn. App. 878, 882, 816 P.2d 61 (1991) (WIGA may not offset LEOFF benefits because they are not payments under an insurance policy).

Only five other states in the nation adhere to our public system of workers' compensation.[4] *See* 4 Arthur Larson, *Workmen's Compensation* § 92.11 (1990). The one other court which has considered the status of a state fund in a public system has held that such a fund is not an insurer. *Beyer's Cement, Inc. v. North Dakota Ins. Guar. Ass'n*, 417 N.W.2d 370 (N.D. 1987). The sole question before that court was whether the Workers Compensation Board of Manitoba constituted an "insurer" for purposes of North Dakota's insurance guaranty act, N.D. Cent. Code ch. 26.1-42, which is similar to our own. The North Dakota Supreme Court held that the Manitoba Workers Compensation Board was not an insurer, and in so doing, indicated that its own state fund was also not an insurer. *Beyer's Cement*, 417 N.W.2d at 373. In part, the court relied on the comments of

---

[4]Most states cede the field of workers' compensation to private insurance companies. However, 14 other states also have state workers' compensation funds which compete with these private insurers to provide workers' compensation coverage. 4 Arthur Larson, *Workmen's Compensation* § 92.11 (1990). Only two courts have considered the status of these types of state funds in the context of similar insurance guaranty acts; both held the state fund to be an "insurer". *Corvallis Aero Serv., Inc. v. Villalobos*, 81 Or. App. 137, 724 P.2d 880, *review denied*, 302 Or. 461 (1986); *Martinez v. State Workman's Comp. Ins. Fund*, 163 Ariz. 380, 788 P.2d 113 (Ct. App. 1989), *review denied* (Mar. 27, 1990). In both states, the fund is statutorily defined as an "insurer". Or. Rev. Stat. Ann. § 656.752(1) (1991); Ariz. Rev. Stat. Ann. § 23-901(8) (Supp. 1992). Because these state funds were specifically created to act as, and compete with, insurance companies, we do not find these cases dispositive as to the nature of our own state fund, which was originally created as the exclusive means of providing workers' compensation.

the NAIC that its model bill excluded amounts due to insurers from the definition of "covered claim" because "[t]he subcommittee does not feel that coverage should be extended to elements of the *insurance industry* which know or reasonably can be expected to know the financial condition of various companies". (Italics ours.) Model Bill § 5(3) comment. *See Beyer's Cement*, 417 N.W.2d at 372. However, in states such as Washington or North Dakota, where the state workers' compensation funds are not competing with private insurers nor part of the insurance industry, such a rationale does not apply.

The *Beyer's Cement* analysis is applicable to our own workers' compensation scheme. The Legislature has eliminated private insurance companies from the workers' compensation arena. The only two methods by which an employer may fulfill its duty to provide such compensation is by participation in the state fund or by qualifying as a self-insurer. RCW 51.14.010. The state fund is supported by taxes assessed against workers and employers. RCW 51.08.015. The Department does not compete for insurance business nor does participation in the fund constitute a "contract of insurance". The Department will not be considered an "insurer" for purposes of the Guaranty Act.

■■ This outcome protects the State's strong interest in reimbursing its workers' compensation fund, as well as fulfilling the overall purpose of the Guaranty Act. As has been stated previously, "the Department has an unqualified, unrestricted right to all of the balance [of the worker's third party recovery after subtracting statutory amounts] to the extent of the amount of compensation and benefits paid and payable". *Maxey*, 114 Wn.2d at 546. The purposes of the workers' compensation act would be defeated if the Department's right to reimbursement were impaired. *Clark v. Pacificorp*, 118 Wn.2d 167, 185, 822 P.2d 162 (1991). Congruently, one of the purposes of the Guaranty Act is "to place the claimant in the same position as he or she would have been had the liability insurer remained solvent". *Mullins*, 62 Wn. App. at 887. Had Mission remained solvent, there would be no doubt

that the Department's lien would be enforced. The result we reach today ensures that this outcome does not depend on the financial stability of the insurer.

In sum, we hold that the Department, in administering the state workers' compensation fund, does not qualify as a "reinsurer, insurer, insurance pool or underwriting association" for purposes of the Guaranty Act. The Superior Court is reversed, and the decision of the Board of Industrial Insurance Appeals is affirmed.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.